UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER LEE TYREE,

          Plaintiff,          Case No. 1:23-cv-1240

v.                                    Honorable Phillip J. Green

UNKNOWN LUTHER, et al.,

          Defendants.
_____/

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). The Court granted Plaintiff leave to proceed *in forma pauperis* in a prior order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 18, PageID.187.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the

named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

2

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's ADA, RA, and embezzlement claims for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims regarding Plaintiff's allegedly inadequate mental health care and all Eighth Amendment conditions of confinement claims, *except* for Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions. Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions against Defendants will remain in the case.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following ICF officials and medical staff: Resident Unit Manager Unknown Luther, Warden John Davis, Prison Counselor Unknown Smith, Chief Unit Psychologist David Maranka, and Deputy Warden Unknown Bonn. (Am. Compl., ECF No. 18, PageID.184, 185.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.185.)

In Plaintiff's amended complaint,[2] he states that he has "a SMI [severe mental illness]/MMD [major depressive disorder]."[3] (*Id.*, PageID.186.)  Plaintiff alleges that he is being "held in a segregation/ad[ministrative] seg[regation] setting that is causing mental distress and emotional impairment along with worsening mental health symptoms despite [his] constant complaints to Internal Affairs and [use of the] grievance system." (*Id.*)

Plaintiff states that all named Defendants are part of the security classification committee (SCC) for the Start Now Program.[4] (*Id.*)  Plaintiff alleges that "MDOC documents state [that the Start Now Program] is a [general population] program but it is run like seg[regation]/ad[ministrative] seg[regation] with groups." (*Id.*)  Plaintiff claims that Defendants are "denying reasonable mental health treatment" in violation of the ADA and the RA.  (*Id.*)

---

[2] Originally, Plaintiff filed a civil rights action with eight other state prisoners. (*See* ECF No. 1.) In an order entered on November 28, 2023, the Court, *inter alia*, concluded that the interests of justice favored severing the Plaintiffs' claims into separate actions. (ECF No. 16, PageID.175–179.) The Court directed each remaining Plaintiff to file an amended complaint in that Plaintiff's newly opened action. (*Id.*, PageID.181.) Plaintiff filed an amended complaint, and his claims continue in the instant case.

[3] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's filings.

[4] The Court has previously recognized that Start Units are programs designed to provide an alternative to administrative segregation for those inmates who, *inter alia*, have been diagnosed with serious mental illnesses. *See Medina-Rodriguez v. Frank*, No. 1:22-cv-471, 2022 WL 17038113, at *2 n.2 (W.D. Mich. Nov. 17, 2022). "Inmates are classified according to stage, with corresponding restrictions." *Id.*

5

Additionally, Plaintiff claims that Defendants "harbor[] mentally ill prisoners in the Start Now Program to embezzle money from the government." (*Id.*) Plaintiff also claims that the Defendants are "running an unsafe and inhumane living environment for the health and safety both medically and mentally for Plaintiff." (*Id.*) Further, Plaintiff claims that his numerous complaints to Defendants "about mental health safety" and "issues occurring with harassment and mental abuse by officers and nursing" were ignored. (*Id.*) Additionally, Plaintiff claims that he "was ignored when mentally in distress with suicidal thoughts, anxiety, PTSD, and schizophrenia symptoms." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the ADA and RA. (*Id.*) Additionally, Plaintiff's allegations suggest that he is bringing claims regarding Defendants alleged embezzlement of government funds. (*See id.*) Further, the Court construes Plaintiff's complaint to raise Eighth Amendment claims against Defendants. (*See id.*) Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.187.) Plaintiff also asks the Court to "shut down [the] Start Now Program." (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must determine whether the complaint

contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment Claims

The Court first construes Plaintiff's amended complaint to raise Eighth Amendment claims regarding the conditions of his confinement in the Start Now

7

Program and about the mental health care treatment that he received. (*See* Am. Compl., ECF No. 18, PageID.186.)

### 1. Conditions of Confinement Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Further, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*,

8

509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

### a. Claim Regarding Continued Detention in Segregation-Like Conditions

In this action, Plaintiff alleges that he is being "held in a segregation/ad[ministrative] seg[regation] setting" in the Start Now Program, which "is causing mental distress and emotional impairment along with worsening mental health symptoms despite his complaints [about it]." (Am. Compl., ECF No. 18, PageID.186.) Plaintiff claims that he has had "suicidal thoughts, anxiety, PTSD, and schizophrenia symptoms." (*Id.*) Plaintiff also claims that the Defendants, as members of the SCC, are "running an unsafe and inhumane living environment for the health and safety both medically and mentally for Plaintiff." (*Id.*) Although Plaintiff's amended complaint does not indicate how long he has been detained in this setting, Plaintiff's statements in the original complaint suggest that he was placed in ICF's Start Now Program in May of 2023. (*See* ECF No. 1, PageID.30.)

Plaintiff's allegations suggest that he has serious mental health issues, but that Defendants, as members of the SCC, continued to house Plaintiff in a restrictive segregation setting for an extended duration of time. (*See* Am. Compl., ECF No. 18, PageID.186.) Although Plaintiff has by no means proven his Eighth Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claim regarding Plaintiff's continued detention in segregation-like conditions against Defendants Luther, Davis, Smith, Maranka, and Bonn, all of

9

whom Plaintiff identifies as members of the SCC. *Cf. J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020) ("Placement of a mentally-ill detainee in solitary confinement 'raises a genuine concern that the negative psychological effects of his segregation will drive him to self-harm.'" (citation omitted)); *Snider v. Saad*, No. 1:20-cv-963, 2020 WL 6737432, at *7–8 (W.D. Mich. Nov. 17, 2020) (concluding that the prisoner-plaintiff's Eighth Amendment claim against members of the SCC regarding his conditions of confinement, which he alleged were more severe than typical conditions of segregation, and which he alleged had a particularly "deleterious impact on him" due to his mental illness could not be dismissed on initial review).

### b. Other Intended Conditions of Confinement Claims

Plaintiff also claims that his numerous complaints to Defendants "about mental health safety" and "issues occurring with harassment and mental abuse by officers and nursing" were ignored. (Am. Compl., ECF No. 18, PageID.186.) As an initial matter, Plaintiff does not explain how he presented his complaints to Defendants—i.e., were Plaintiff's complaints set forth in a written format, such as a grievance or a letter, or were his complaints presented verbally to Defendants in person. Without such supporting facts, Plaintiff fails to show that the named Defendants were even aware of the alleged violations of his constitutional rights, let alone that they were personally involved in them.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61. And, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556

10

U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Instead, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts showing that Defendants in fact received his complaints regarding subordinate employees' alleged wrongdoing, let alone that they were personally involved in the alleged violations of Plaintiff's constitutional rights.

11

Further, Plaintiff fails to allege any *facts* showing that Defendants encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendants were personally involved in the specific incidents of alleged wrongdoing as related to the conditions of his confinement.

Accordingly, for all of the reasons set forth above, all intended Eighth Amendment conditions of confinement claims, except for Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions, against Defendants Luther, Davis, Smith, Maranka, and Bonn will be dismissed.

### 2. Mental Health Care Claims

The Eighth Amendment is also violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a

sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

Here, the Court assumes, without deciding, that Plaintiff's mental health care needs are sufficiently serious to satisfy the objective component of the relevant two-prong test. However, as to the subjective component, Plaintiff does not allege that any of the named Defendants had any involvement in Plaintiff's receipt, or lack thereof, of mental health care. (*See* Am. Compl., ECF No. 18, PageID.186.) Where a person is named as a defendant without an allegation of specific conduct, the complaint or claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Moreover, besides Plaintiff's conclusory assertion that he is not receiving "reasonable mental health treatment," Plaintiff alleges no further facts explaining what treatment he is, or is not, receiving, and how the treatment he is receiving is "[un]reasonable." (Am. Compl., ECF No. 18, PageID.186.) Plaintiff's conclusory assertions unsupported by any facts are insufficient to state a claim upon which relief may be granted. *See Twombly*, 550 U.S. at 555–61; *Iqbal*, 556 U.S. at 676.

13

Accordingly, because Plaintiff fails to allege that any of the named Defendants were involved in his receipt of mental health care, Plaintiff fails to state an Eighth Amendment claim against Defendants regarding Plaintiff's allegedly inadequate mental health care.

### B. ADA and RA Claims

Plaintiff alleges that Defendants have violated his rights under the ADA and RA. (Am. Compl., ECF No. 18, PageID.186.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The

14

proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants in their official and individual capacities. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA and RA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA and RA claims, in this action, Plaintiff alleges that Defendants have violated the ADA and RA "by denying reasonable mental health treatment" to Plaintiff, who has "a SMI [severe mental illness]/MMD [major depressive disorder]." (Am. Compl., ECF No. 18, PageID.186.) Although it is

15

clear that Plaintiff believes he has received inadequate mental health care, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against *due to his disability*.

As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA and the RA are not appropriate federal causes of action to challenge the sufficiency of medical or mental health treatment. *See, e.g., Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Med. Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").[2]

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private

Here, Plaintiff fails to show that Defendants denied him mental health care because of his disability. Plaintiff's conclusory allegations of an ADA violation and an RA violation without specific supporting factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For these reasons, Plaintiff's ADA and RA claims will be dismissed.

### C. Claims Regarding Alleged Embezzlement of Government Funds

Plaintiff claims that Defendants "harbor[] mentally ill prisoners in the Start Now Program to embezzle money from the government." (Am. Compl., ECF No. 18, PageID.186.) To the extent that Plaintiff intended to bring an "embezzlement claim" against Defendants, embezzlement is a crime under federal or state law and is not a private cause of action. *Cf. Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *10 (E.D. Mich. Sept. 13, 2007) (discussing that although "in certain circumstances, [courts may] infer a private cause of action, where there is a bare criminal statute, with no indication that civil enforcement is available, a private cause of action will not be inferred" and concluding that a claim for embezzlement alleges "violation of [a] purely criminal statute[]" (citations omitted)); *Stern v. Epps*, 464 F. App'x 388, 393 (5th Cir. 2012) ("Embezzlement and money laundering are crimes under Mississippi law, not private causes of action." (citations omitted)). Accordingly, any intended "embezzlement claims" will be dismissed.

---

right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

17

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's ADA, RA, and embezzlement claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims regarding Plaintiff's allegedly inadequate mental health care and all Eighth Amendment conditions of confinement claims, *except* for Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions. Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions against Defendants Luther, Davis, Smith, Maranka, and Bonn will remain in the case.

An order consistent with this opinion will be entered.

Dated:  April 9, 2024                               /s/ Phillip J. Green
                                                    PHILLIP J. GREEN
                                                    United States Magistrate Judge